**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| JENNIFER BOYLES,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                  Defendant. | Case No. 3:15-cv-00156-TMB<br><br>ORDER REMANDING FOR FURTHER PROCEEDINGS<br><br>Docket No. 38 |

# I.  INTRODUCTION

Jennifer Boyles protectively filed an application for disability insurance benefits ("disability benefits") under Title II of the Social Security Act ("the Act") on May 31, 2011, alleging disability beginning November 15, 2010.[1]  Ms. Boyles has exhausted her administrative remedies and seeks relief from this Court.[2]  She filed a motion for summary judgement and an accompanying brief in support.[3]  Ms. Boyles argues that the determination by the Commissioner of the Social Security Administration ("Commissioner") that she is not disabled, within the meaning of the Act, is not supported by substantial evidence and the Administrative Law Judge

---

[1] Docket No. 12; Transcript ("Tr.") 216.

[2] Docket No. 1; Tr. 1.

[3] Docket Nos. 11; 12.

*Boyles v. Colvin*, 3:15-cv-00156-TMB
Order Remanding for Further Proceedings

("ALJ") committed legal errors.[4]   Ms. Boyles asks for a reversal of the Commissioner's decision and a remand for calculation of benefits.[5]

Commissioner responded with an answering brief opposing Ms. Boyles' motion[6] and Ms. Boyles replied.[7]   For the reasons set forth below, Claimant's Motion for Summary Judgment at Docket 11 is GRANTED IN PART and this matter is REMANDED for further consideration in accordance with this opinion.

## II.     STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or based upon legal error.[8]   "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9]   Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[10]   In making its determination,

---

[4] Docket Nos. 1 at 2; 12 at 9.

[5] Docket Nos. 11; 17 at 5.

[6] Docket No. 15.

[7] Docket No. 17.

[8] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[10] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[11]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[12]

## III.    DETERMINING DISABILITY

The Act provides for the payment of disability benefits to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[13]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[14]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any

---

[11]  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[12]  *Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).

[13]  42 U.S.C. § 423(a) (2012).

[14]  42 U.S.C. §§ 423(d)(1)(A) (2012).

individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[15]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[16] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[17] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[18] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[19] The steps, and the ALJ's findings in this case, are as follows:

Step 1.  *Determine whether the claimant is involved in "substantial gainful activity."* The ALJ concluded Ms. Boyles has not engaged in gainful activity since November 15, 2010.[20]

Step 2.  *Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or*

---

[15] 42 U.S.C. § 423(d)(2)(A) (2012).

[16] 20 C.F.R. § 404.1520(a)(4) (2013).

[17] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[18] *Id.*

[19] *Id.* at 1099.

[20] Tr. 21.

4

*mental ability to do basic work activities, and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.* The ALJ determined Ms. Boyles has the following combination of severe impairments: bilateral plantar fasciitis; tarsal tunnel of the left lower extremity; degeneration and bursitis in the bilateral hips; right and left shoulder adhesive capsulitis; osteoarthritis of the right knee; peripheral neuropathy of the left lower extremity; migraine headache; bipolar disorder, manic; depressive disorder, not otherwise specified; and anxiety disorder.[21]

Step 3. *Determine whether the impairment is the equivalent of a number of listed impairments found in 20 C.F.R. pt. 404, subpt. P, App. 1 that are so severe as to preclude substantial gainful activity. If the impairment is the equivalent of one of the listed impairments, and meets the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.* The ALJ determined that Ms. Boyles' impairments do not meet one of the listed impairments alone or in combination.[22]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[23] Once determined, the RFC is used at both step four and step five.[24] An RFC assessment is a determination of what a claimant is able to do despite his physical, mental, or other

---

[21] *Id.*

[22] Tr. 22.

[23] 20 C.F.R. § 404.1520(a)(4) (2013).

[24] *Id.*

limitations.[25]  In this case, the ALJ concluded that Ms. Boyles has the RFC to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs; she can occasionally balance, stoop, crouch, kneel, or crawl; she can perform occasional bilateral overhead reaching; and she is limited to simple, routine, and repetitive tasks.[26]

Step 4.  *Determine whether the impairment prevents the claimant from performing work performed in the past.  At this point, the analysis considers the claimant's RFC and past relevant work.  If the claimant can still do his or her past relevant work, the claimant is deemed not to be disabled.  Otherwise, the evaluation process moves to the fifth and final step.* The ALJ found that Ms. Boyles is unable to perform any past relevant work.[27]

Step 5.  *Determine whether the claimant is able to perform other work in the national economy in view of his or her age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.*  Based on the testimony of a vocational expert, the ALJ determined there are other jobs that exist in significant numbers in the national economy that Ms. Boyles could perform including: ticket taker, DOT No.

---

[25]  20 C.F.R. § 404.1545(a) (2013).

[26]  Tr. 24.

[27]  Tr. 31.

344.677-010 light, unskilled (SVP 2); usher, DOT No. 344.677-014, light, unskilled (SVP 2); and

counter attendant, DOT No. 249.366-010, light, unskilled (SVP 2).[28]

## IV.     BACKGROUND

Ms. Boyles was born in 1974.[29]   She moved to Alaska in May 2015.[30]   Prior to then, she

lived in California as well as throughout the United States.[31]   Ms. Boyles has a bachelor's degree

in criminal justice, a master's degree in cross cultural education, and completed a credentialing

program to be a teacher.[32]   Her last job was in November 2010 as a school teacher for junior high

children.[33]   She is married and has one child.[34]

---

[28] Tr. 32.   The Court notes that the DOT numbers provided do not meet all of the job titles provided.   *e.g.,* DOT No. 344-677-010 is a "Press-Box Custodian" and not a ticket taker, Dictionary of Occupational Titles website, http://www.occupationalinfo.org/34/344677010.html (last visited Sept. 28, 2016).   On remand, the ALJ should determine if these errors affect the step five analysis.

[29] Tr. 216, 257.

[30] Tr. 7.

[31] Tr. 136; *see* Tr. 206-214.

[32] Tr. 46, 301.

[33] Tr. 48.

[34] Tr. 301-02, 620.

Before becoming a teacher she worked as an armed probation officer and as a caseworker.[35] While working as a probation officer, Ms. Boyles injured her right knee[36] resulting in surgery.[37] As it was determined that she could not return to her job as a probation officer Ms. Boyles and her employer, she changed careers and trained to become a teacher.[38] In between the time she worked as a probation officer and became a teacher, Ms. Boyles had many surgeries as well as a difficult pregnancy were she was on complete bedrest.[39]

In total, Ms. Boyles has undergone four surgeries on her left foot /ankle between 2006 and 2007,[40] at least one surgery on her right knee, one in 1992 and the second in 2004, a gastric bypass, a hysterectomy, and a breast augmentation.[41] Ms. Boyles intermittingly utilized crutches, a motorized scooter, walker, cane, and a moonboot while undergoing the surgeries for her foot.[42]

---

[35] Tr. 47.

[36] From the administrative record it is unclear whether she injured her right knee more than once and had subsequent surgeries. *See* Docket No. 1; 659 (surgery 2002); 280 (work related injury 2006); 316 (arthroscopic surgery Dec. 2005); 549 (arthroscopic surgery April 2003 and fall 1999).

[37] Tr. 257, 316.

[38] Tr. 496.

[39] Tr. 47-48, 304.

[40] Tr. 292 (left calcaneal heal spur resection with partial plantar fasciotomy, Aug. 2006); 411 (cryosurgery Jan. 2007); 272 (plantar fasciotomy, left heel and excision of deep scar, left heel July 2007); 372 (cryosurgery, left heel Nov. 2007).

[41] Tr. 339, 634, 549, 660, 409, 496; *see also* Docket No. 12 at 1.

[42] Tr. 301, 317, 355, 358, 368, 490, 498, 515, 365.

She developed pain in her shoulders after prolonged use of crutches.[43]   Following one of the many

surgeries, Ms. Boyles fell and tore one of her shoulders; since that time, it routinely pops out and

causes her intense pain.[44]

Over a near-decade long treatment relationship, Ms. Boyles' podiatrist, Dr. Sinaie, has

prescribed Neurontin, Lidoderm, Percocet, and Flexeril[45] as well as the use of a TENS[46] unit at

home, a Dynasplint,[47] custom made functional orthotics, and a solid ankle foot brace.[48]   She was

simultaneously treated at Central Valley Occupational Medical Group ("CVOMG") during this

time, where she received her primary care.[49]   Through CVOMG, she has been prescribed

---

[43] Tr. 51,513.

[44] Tr. 669 (doctor visit regarding left shoulder June 28, 2012); *See also* Tr. 651.  Ms. Boyles refers to her right shoulder, however, in her testimony.   Tr. 49, 51.

[45] Neurontin (Gabapentin) is used to treat restless leg syndrome, seizures, and post-herpetic neuralgia (PHN),  https://medlineplus.gov/druginfo/meds/a694007.html; Lidoderm (Lidocaine transdermal patch) is used to treat PHN by stopping nerves from sending pain signals, https://medlineplus.gov/druginfo/meds/a603026.html; Flexeril (Cyclobenzaprine) is a muscle relaxant,  https://medlineplus.gov/druginfo/meds/a682514.html (websites last visited Sept. 20, 2016).

[46] Transcutaneous Electrical Nerve Stimulation, http://www.tensunits.com/ (last visited Sept. 20, 2016).

[47] Dynasplint systems are bilateral, spring-loaded tensioning devices that help to increase joint range of motion (ROM) for patients experiencing ROM deficits due to shortened connective tissue, http://www.dynasplint.com/ (last visited Sept. 20, 2016).

[48] Tr. 690 (2013), 703 (2012), 599 (2011) 603, 601 (2010), 605 (2009), 358 (2008), 455 (2005).

[49] *See* Tr. 495-496, 680, 684.

Xanax,[50] Adderall,[51] and Percocet[52] for depression, anxiety, and chronic pain.[53] The ALJ hearing was held October 2013.[54] At the time of the ALJ hearing, Ms. Boyles wore a leg brace on her left foot during the day and a different brace at night every day.[55]

Ms. Boyles claims the following severe impairments: (1) tarsal tunnel neuropathy in her left foot, (2) degeneration of both her shoulders, and (3) anxiety.[56] These severe impairments are in addition to depression, hip bursitis, plantar fasciitis, memory and concentration problems, insomnia, migraines, right knee problems, and issues related to the full use of her hands, and that combined they preclude Ms. Boyles from all work.[57]

---

[50] Xanax (Alprazolam) is used to treat anxiety disorders and panic disorder by decreasing abnormal excitement in the brain, https://medlineplus.gov/druginfo/meds/a684001.html (last visited Sept. 20, 2016).

[51] Adderall (Dextroamphetamine and Amphetamine) is used as part of a treatment program to control symptoms of attention deficit hyperactivity disorder, narcolepsy and other conditions, https://medlineplus.gov/druginfo/meds/a601234.html (last visited Sept. 20, 2016).

[52] Percocet (Acetaminophen) is used to relieve mild to moderate pain from headaches, muscle aches, menstrual periods, colds and sore throats, toothaches, backaches, and reactions to vaccinations (shots), reduce fever, and osteoarthritis (arthritis caused by the breakdown of the lining of the joints), https://medlineplus.gov/druginfo/meds/a681004.html (last visited Sept. 20, 2016).

[53] Tr. 678; *see also* Tr. 689.

[54] Tr. 41.

[55] Tr. 49-50; *see also* Tr. 690 (Dr. Sinaie treatment plan June 2013).

[56] Tr. 44.

[57] Tr. 44-45, 219.

10

For her disability benefits claim, Ms. Boyles underwent an independent medical evaluation ("IME")[58] as well as an independent psychological evaluation ("IPE").[59]   Ms. Boyles' date of last insured was December 31, 2014.[60]

## V.    APPLICABLE LAW

"Regardless of its source, [the SSA] will evaluate every medical opinion [it] receive[s]."[61] The ALJ must consider articulated factors to determine what weight to accord the opinions of medical sources.[62]   They include examining relationship, treating relationship, supportability, consistency, specialization, and "other factors" such as the familiarity of the SSA disability benefits process and other information in the case record.[63]   For a treating source's opinion the ALJ is required to also consider two additional factors: the length of the treatment relationship as

---

[58] Tr. 627.

[59] Tr. 619.

[60] Tr. 239, 19.

[61] 20 C.F.R. § 404.1527(c) (2013).

[62] *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

[63] 20 C.F.R. § 404.1527(c) (2013).

well as the frequency of examination and the nature and extent of the treatment relationship.[64] Specialists' opinions are generally given more weight than medical opinions of non-specialists.[65]

There are three types of physician opinions: those who treat the claimant ("treating physicians"); those who examine, but do not treat the claimant ("examining physicians"); and those who neither examine nor treat the claimant ("non-examining physicians").[66]

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and ambiguities.[67]   A treating source's opinion[68] is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."[69]   Even when a treating physician's opinion is contradicted by the opinion of an examining physician, and that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference."[70] And "[i]n

---

[64] 20 C.F.R. § 404.1527(c)(2) (2013).

[65] 20 C.F.R. § 404.1527(c)(5) (2013).

[66] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[67] *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001) (citing *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998)).

[68] The Court notes that a treating physician is necessarily also a treating source and thus uses the terms treating physician and treating source interchangeably.

[69] 20 C.F.R. § 404.1527(c)(2) (2013).

[70] *Orn v. Astrue*, 495 F.3d at 633 (citing S.S.R. 96–2p at 4, 61 Fed.Reg. at 34,491).

12

many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."[71]

An ALJ may reject a treating physician's medical opinion, if no other doctor has contradicted it, "only for 'clear and convincing' reasons supported by substantial evidence."[72] Even if the treating physician's opinion is contradicted by another doctor, an ALJ may not reject a treating physician's opinion without providing "'specific and legitimate reasons' supported by substantial evidence in the record."[73] This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"[74] The ALJ cannot offer mere conclusions, instead "[h]e must set forth his own interpretations and explain why they, rather than the doctor's, are correct."[75]

Likewise, the ALJ must provide clear and convincing reasons for rejecting an uncontradicted opinion of an examining physician or specific and legitimate reasons that are supported by substantial evidence in the record if contradicted.[76] When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions,

---

[71] *Id.*

[72] *Lewis v. Apfel*, 236 F.3d at 517 (citing *Reddick,* 157 F.3d at 722.

[73] *Orn v. Astrue*, 495 F.3d at 632-33 (citing *Reddick*, 157 F.3d at 715.

[74] *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

[75] *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-2 (9th Cir. 1988).

[76] *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

the conclusions of the examining physician are not considered "substantial evidence."[77]  An ALJ may discredit a treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.[78] An error made by an ALJ is harmless only if it is 'inconsequential to the ultimate non-disability determination.'"[79]

## VI.    ANALYSIS

Ms. Boyles asserts four claims in her motion for summary judgement consisting of the ALJ's: (1) erroneous assignment of "little weight" to Dr. Zhang's opinion;[80] (2) assignment of "little weight" to Dr. Eldrageely's opinions as expressed in 2012 and 2013 federal student loan discharge forms was in error;[81] (3) rejection of Ms. Boyles' restriction to "moderately complex tasks with occasional public contact" as expressed by a consulting doctor and treating doctor as well as both state agency reviewing psychological consultant doctors ("reviewing psychological

---

[77] *Orn v. Astrue*, 495 F.3d at 632.

[78] *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)).

[79] *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Monina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

[80] Docket No. 12 at 11-13.

[81] *Id.* at 13-15.

consultants") was in error;[82] and (4) overall evaluation of Ms. Boyles' mental abilities was not supported by substantial evidence.[83]    The Court address these issues in turn.

    *(1)    Erroneous assignment of "little weight" to Dr. Zhang's opinion*

J. Zhang, Psy.D., conducted an IPE of Ms. Boyles at the behest of the SSA on April 11, 2012.    During the evaluation, he conducted the Wechsler Adult Intelligence Scale-IV ("WDIS-IV"), Wechsler Memory Scale-IV ("WMS-IV"), Bender-Gestalt II Z ("B-S II") on Ms. Boyles.[84] He diagnosed her with Axis I bipolar disorder, currently manic; Axis IV financial problems, unemployment, and untreated mood problems, and Axis V score of forty-nine, while deferring other diagnosis in Axis II and III.[85]    His impression was that she had marked mood disturbances with current mania and he encouraged her to address this with a psychiatrist.[86]    He also noted she appeared genuine and truthful and that there was no evidence of exaggeration.[87]

Dr. Zhang opined that Ms. Boyles has a number of marked limitations as well as a few mild/moderate ones.    Specifically, he opined Ms. Boyles was markedly limited in her ability to: understand, remember and carry out complex instructions—as opposed to simple one or two-step instructions where he opined she had mild limitations; maintain adequate concentration,

---

[82] Docket No. 12 at 10-11.

[83] *Id.* at 9.

[84] Tr. 621-623.

[85] Tr. 623.

[86] Tr. 623.

[87] Tr. 620.

15

persistence, and pace; perform tasks associated with common work activity (*e.g.,* attendance and safety); maintain regular attendance and perform work activities consistently; and manage money on her own behalf.[88]  He also opined that Ms. Boyles was moderately limited in her abilities to: relate and interact appropriately with the public, coworkers, and supervisors; accept instructions from supervisors; perform work activities without special or additional supervision.[89]

The ALJ gave Dr. Zhang's opinions "little weight" because she did not find it was adequately supported by his objective findings and because of an absence of any significant mental health treatment.[90]  She also rejected the Global Assessment of Functioning ("GAF") score because it was inconsistent with the treatment records.[91]

Ms. Boyles asserts the ALJ's decision to reject Dr. Zhang's opinion was done in error.[92] She argues the ALJ's finding that Dr. Zhang's opinions are not adequately supported by his objective findings is not explained beyond a one sentence dismissal and that one sentence does not constitute substantial evidence.[93]  She also argues that the second rationale for the ALJ's rejection of the examining doctor's opinion (*i.e.,* an absence of any significant mental health treatment) was improperly considered by the ALJ.  She gives two reasons in support.  First, she states that both

---

[88]  Tr. 623-24.

[89]  Tr. 624.

[90]  Tr. 30.

[91]  *Id.*

[92]  Docket No. 12 at 12.

[93]  *Id.*

Ms. Boyles and her primary care physician, Dr. Eldrageely, "indicated there were barriers to specialist treatment in the form of financial issues and remoteness / transportation issues."[94] Second, she points out that Ms. Boyles received psychiatric medication.[95]

The Commissioner argues that the ALJ provided specific and legitimate reasons supported by substantial evidence when she rejected the examining doctor's opinions.[96] She points to Dr. Zhang's observations during the exam that: Ms. Boyles was alert and oriented in all spheres during the examination; her intellectual functioning fell within the average range; she was able to provide sufficient background for the evaluation; she demonstrated adequate capacity to cooperate with the evaluation.[97] She also contends that the ALJ properly rejected Dr. Zhang's opinions because there was a lack of significant mental health treatment or documentation of increased panic attacks and Ms. Boyles was often described as "pleasant" by her primary care provider."[98]

The Commissioner also contends that the ALJ's rejection of Dr. Zhang's GAF score was not done in error because the GAF is no longer included in the most recent edition of the diagnostic and statistical manual—and thus not significant probative evidence.[99] And she asserts that the ALJ reasonably discounted the GAF score given the inconsistency with the treatment records. To

---

[94] Docket No. 12 at 12-13.

[95] *Id.* at 13.

[96] Docket No. 15 at 8.

[97] Docket No. 15 at 9.

[98] *Id.*

[99] *Id.* at 10.

support that assertion, the Commissioner states the same reasons (*i.e.,* Ms. Boyles is often described as pleasant and there is no documentation of increased panic attacks) and that the records demonstrate generally benign findings.[100]

The Court finds the ALJ erred in the wholesale rejection of Dr. Zhang's opinions, because the ALJ did not properly reject an examining physician's opinions. An examining physician's opinions can only be rejected by "specific and legitimate reasons that are supported by substantial evidence in the record" if contradicted by another. In this case, two reviewing psychological consultants contradicted Dr. Zhang's opinions, thus this is the standard that applies.

Regarding the first rationale, the "absence of any significant mental health treatment," the ALJ erred in discounting the reasons proffered by both Ms. Boyles and her treating physician—*i.e.,* financial and accessibility barriers to her ability to have specialized psychiatric treatment and she was and had been taking psychiatric medication to address her mental health. As her treating primary care physician explained, "Although Ms. Boyles could benefit from cognitive behavioral therapy due to the location in the mountains where she lives transportation is a considerable issue for her as it takes approximately 2 to 2 ½ hours to get to the closest town."[101]

Ms. Boyles testified to the fact that when she and her husband go grocery shopping it is in bulk for "four to five weeks at a time" and they typically "have to get a hotel room" because she

---

[100] Docket No. 15 at 11.

[101] Tr. 661.

"won't make it back home" due to sheer exhaustion."[102]   This implies a great distance exists between where she resides and the nearby town—which is consistent with what her doctor stated— since going to the grocery store typically does not involve an overnight stay at a hotel.   Moreover, Ms. Boyles does not drive herself, due to her medication side effects, and relies on her husband to drive her.[103]   Unsurprisingly, he cannot always get time off from work to be her chauffeur.[104]

A lack of driving ability coupled with the long distance that would be involved in on-going counseling is a valid reason why she has not pursued formal psychiatric care.   A lack of financial resources is another valid reason.[105]   The ALJ cannot dismiss these valid reasons and use her lack of formal treatment against her.[106]   Additionally, the lack of psychiatric treatment explains why there would also be a lack of treatment records and why the IPE by Dr. Zhang was necessary in the first place.

Turning to the lack objective evidence in Dr. Zhang's report rationale, an ALJ must provide "specific and legitimate reasons that are supported by substantial evidence" to reject an examining

---

[102]   Tr. 59.

[103]   Tr. 58-59. ("Out of the last six months, I drove once… to the rec room of where we live which is across, about 100 yards. . . . there was a birthday party and so I went to take the present over").

[104]   Tr. 63.

[105]   Tr. 66 ("I can't afford it right now").

[106]   *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (citing *Orn v. Astrue*, 495 F.3d at 638) (this court has held that no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment).

opinion and may discredit a treating physician's opinions that are "conclusory, brief, and unsupported by the record as a whole … or by objective medical findings."[107]   The ALJ rejected Dr. Zhang's opinions because she concluded they were not supported by objective medical findings in *his* report.   Since the Court has invalidated the other rationale used by the ALJ to dismiss Dr. Zhang's opinions, this rationale must meet the specific and legitimate reasons that are supported by substantial evidence standard alone.   It does not.

First, the opinions are not conclusory, brief and unsupported by the record as a whole or by objective medical findings.   Dr. Zhang conducted a battery of tests on Ms. Boyles during the examination as explained above.   On the WAIS-IV, she showed "variable performance," on WMS-IV, she "performed poorly," and on the B-G II, she fell in the "adequate range."   Dr. Zhang found these to be valid test results.[108]   During the IPE, he conducted a mental health examination where he found that her speech was "very pressured," that she exhibited "moderate psychomotor agitation," her attention and concentration were "poor," that she needed frequent redirection to remain focused on the evaluation process, and she demonstrated moderately limited insight and fair judgement."[109]   He found no evidence of exaggeration and diagnosed her with bipolar disorder, currently manic, with untreated mood problems and his impression of her was that she

---

[107] *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting *Batson*, 359 F.3d at 1195.   This applies to any physician's opinion.   *Thomas v. Barnhart*, 278 F.3d 947, 657 (9th Cir. 2002).

[108] Tr. 621-623.

[109] Tr. 620-21, 623.

exhibited marked mood disturbances with current mania.[110]  Consequently, he has objective

evidence in his report by way of the battery of tests he conducted and his personal observations.

Second, these opinions and impressions are supported by substantial evidence in the

administrative record.  Dr. Eldrageely's 2012 and 2013 opinions for one.  Dr. Eldrageely treated

Ms. Boyles at CVOMG since 2008, in conjunction with other primary care physicians who treated

her there from 2005.  He opined, in 2012 and 2013, that Ms. Boyles suffers from depression,

psychological factors, anxiety, and a personality disorder and that these affect her physical

condition as well as interfere with the attention and concentration necessary to sustain simple,

repetitive work tasks.[111]  And he opined that she has marked limitations in her ability understand,

remember, and carry out detailed instructions; maintain attention and concertation for extended

periods; work in coordination with or proximity to others without being distracted by them;

complete a normal work day and week without interruptions from psychologically-based

symptoms; deal with work stressors; appropriately to change.[112]  He supported these opinions by

referring to two different "psychological assessments," purportedly conducted two years apart,

along with an interview of Mr. and Ms. Boyles that established a diagnosis of

> Axis 1 30.89 Pain disorder both psychological and general medical,
> 309.28 Adjustment disorder with mixed anxiety and depressive
> mood disorder and Axis IV Psychological problems related to poor
> coping skills and again Axis I Depressive Disorder, not otherwise

---

[110] Tr. 620.

[111] Tr. 660, 651.

[112] Tr. 665, 656.

specified (NOS) DSM-IV 311 Axis II, Personality Development
Disorder V799, 09 both evaluations had a GAF score of 60.[113]

The administrative record contains one of the IPEs Dr. Eldrageely refers to, which was conducted in 2007[114] after Ms. Boyles was referred due to on-going clinical depression.[115]  It conforms to the information Dr. Eldrageely provided.  The administrative record also shows Dr. Marshall treated Ms. Boyles from at least 2006[116] and Dr. Davies from 2005,[117] while working at CVOMG. As such, Dr. Eldrageely had access to Ms. Boyles' treatment history dating back to that time and had a complete picture of her physical and mental health.  Thus, a treating doctor and an examining doctor support the findings made by Dr. Zhang.  This is more than substantial evidence that outweighs the evidence of the two reviewing psychological consultants the ALJ relied on.

Lastly, the Court cannot entertain reasons not provided by an ALJ.  Consequently, the Commissioner's argument that the GAF is not probative evidence lacks merit.[118]

---

[113] *Id.*

[114] Tr. 300-06 (December 11, 2007, IPE by Eugene T. Couture, Ph.D., and Ana L. Chiles, Psy.D.).

[115] Tr. 496.

[116] Tr. 561.

[117] Tr. 589.

[118] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

*(2) Assignment of "little weight" to Dr. Eldrageely's opinions as expressed in 2012 and 2013 federal student loan discharge form*

Dr. Eldrageely is a primary treating physician of Ms. Boyles.[119]   As previously explained, the administrative record contains treatment records from him dating back to 2008 and as of 2013, when he was employed by CVOMG.[120]   In 2012 and 2013, Dr. Eldrageely completed an extensive form for Ms. Boyles, detailing her medical and mental health issues and employment limitations, purportedly in aid to Ms. Boyles' attempt to discharge her school loan debt.[121]   The forms appear to be identical in both question and answer, with the exception of an added sentence discussing Ms. Boyles' hands and fingers in 2013.[122]

Dr. Eldrageely lists Ms. Boyles' physical and psychological diagnoses as: "bilateral plantar fasciitis, hip bursitis, bilateral shoulder adhesive capsulitis (frozen shoulder), neuropathy, tarsal tunnel syndrome, left shoulder superior labrum anterior and posterior tear, depression, and anxiety."[123]   He also provided a descriptive narrative of the injuries, surgeries, procedures as well as extensive explanation about Ms. Boyles' reactions, complications, and limitations.   For example,

> Due to her feet and the period of time in which she was undergoing foot surgery she was on a 'non weight bearing status' and she gained an excess over 100lbs., it was at this time that Dr. Marshall

---

[119]   Docket No. 12 at 2.

[120]   *See* Tr. 680.

[121]   Tr. 648, 650-57, 659-66.

[122]   Tr. 663-64.

[123]   Tr. 659, 650.

23

prescribed her to have weight loss surgery. Mrs. Boyles underwent a Roux en Y Gastric bypass procedure in June of 2008 with the hope that with the loss of the excess weight she would be able to put weight back on her feet and resume her life as normal. After [the surgery] she entered a new set of problems, during extreme flare ups[,] due to her neuropathy continuing to this day[,] she struggles with her pain management as her body does not allow for the full absorption of the pain medication to a therapeutic level, and because of her gastric bypass she is unable to take NSAIDS[,] which could be helpful when she has swelling[,] all of this just adding to her frustration and social withdrawal.[124]

He specifically opines that Ms. Boyles is: credible, not a malingerer, suffers from depression, psychological factors, anxiety, and a personality disorder, but not a somatoform disorder.[125] That these affect her physical condition and are severe enough to interfere with her attention and concentration as would be necessary to sustain simple, repetitive work tasks on a frequent to constant basis.[126] He notes that Ms. Boyles is not a candidate for further surgery— because of high proneness to scaring—to address her shoulder pain and that all doctors consulting on her case are in agreement with this restriction to surgery because the benefits do not outweigh the risks.[127]

---

[124] Tr. 660, 651.

[125] *Id.*

[126] Tr. 660-61, 664, 651-52, 655.

[127] Tr. 653, 662.

He further opined that she has marked limitations as discussed previously,[128] as well as moderate limitations in her ability to remember locations and work like procedure; make simple work-related decisions; ask questions or request assistance; interact with supervisors and accept instruction and respond appropriately to criticism; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; adapt to travel and unfamiliar places or to use public transportation.[129] He also opined that because of Ms. Boyles' prescribed medications it is difficult or dangerous for her to drive to work on a regular basis.[130]

The ALJ gave these opinions and assessments little weight because she concluded that: the medical record did not support his opinion that Ms. Boyles' is precluded from virtually all postural activities and Ms. Boyles' contradicted his opinions during her testimony when she stated she can sit for at least twenty minutes and stand and walk for fifteen to twenty minutes;[131] the assessment that Ms. Boyles pain or other symptoms would constantly interfere with the attention and concentration necessary to sustain simple, repetitive work tasks was inconsistent with her presentation at the hearing because she was able to provide a detailed account of her medical conditions, symptoms, and limitations; the opinion that Ms. Boyles would be incapable of tolerating even low stress at work was not supported by mental health treatment records subsequent

---

[128] Tr. 665, 656.

[129] *Id.*

[130] Tr. 666, 657.

[131] Tr. 29.

to the alleged onset date;[132] the inconsistencies "suggest Dr. Eldrageely submitted these assessments as an advocate for the claimant rather than as a truly objective examiner."[133]

Ms. Boyles argues the ALJ grossly mischaracterizes her presentation at the hearing in an unfair and inaccurate way.[134] She provides ten examples from the hearing of the ALJ interrupting Ms. Boyles' testimony to correct, clarify, redirect, and refocus her.[135] Furthermore, she contends that in any event her presentation at the hearing does not translate to her ability to sustain gainful work activity as would be required in a job setting.[136] Lastly, she asserts that the ALJ's reliance on the "absence of psychiatric specialist treatment evidence" to discredit Dr. Eldrageely was in error.[137] She argues there is consistent evidence to support his opinions by way of the objective testing, opinions, and assessment of Dr. Zhang as well as some of the opinions of the psychological reviewing consultants.[138] Ms. Boyles states that both she and Dr. Eldrageely explained there were financial and accessibility barriers to her ability to have specialized psychiatric treatment and she was taking psychiatric medication to address her mental health.[139]

---

[132] Tr. 31.

[133] Tr. 29.

[134] Docket No. 12 at 14.

[135] *Id.* at 14-15.

[136] Docket Nos. 12 at 14; 17 at 2.

[137] Docket No. 12 at 15.

[138] *Id.*

[139] Docket No. 17 at 4.

The Commissioner argues that the ALJ's characterization of Ms. Boyles' testimony and courtroom presentation is a valid reason to reject Dr. Eldrageely's opinions and assessments because it contradicts the severity of her claimed symptoms.[140] She also asserts that the ALJ's decision to dismiss his opinion was valid because it was a check-off report and there was no mental health treatment records subsequent to the alleged onset date to support it.[141] That Ms. Boyles "cherry picked" examples of her presentation at the hearing, but they nevertheless do not undermine the ALJ's observations.[142] And that Ms. Boyles rhetorical question—"if the absence of treating records did not support Dr. Eldrageely's statement, then it is not clear how the absence treating records supported the ALJ's opinion"—does not affect the ALJ's determination that Dr. Eldrageely's opinion is unsupported.[143]

The Court finds the ALJ erred in dismissing Dr. Eldrageely's opinions and assessment regarding Ms. Boyles's ability to maintain concertation and attention to sustain simple, repetitive work tasks and tolerate "low stress" at work. As discussed above, Dr. Eldrageely has been treating Ms. Boyles since at least 2008 and he had access to her treatment records dating back to 2005 and up to the date he completed his assessments. And from the very detailed and significant explanations he provided in the assessments, it is clear that he is familiar with the content of these records. Consequently, the ALJ should have deferred to his opinions and not those of the

---

[140] Docket No. 15 at 13-14.

[141] *Id.*

[142] *Id.* at 14.

[143] *Id.*

reviewing psychological consultants, especially since the IPE conducted by Dr. Zhang supports his findings.

Moreover, the ALJ erred in rejecting his opinions because she believed he was acting as an advocate and not objectively. The ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits" but can "introduce evidence of actual improprieties."[144] No such evidence exists here. And Dr. Eldrageely modified Ms. Boyles' work status over the years that he treated her demonstrating his ability to be objective.[145]

> *(3) Inaccurate and inconsistent assignment of weight accorded to different medical source opinions pertaining to contact with the public*
>
> *J. Zhang, Psy.D, Mark Berkowitz, Psy.D, and E.Murillo, M.D.*

As noted above, Dr. Zhang opined that Ms. Boyles has moderate limitation in her ability to relate and interact appropriately with the public, coworkers, and supervisors. Doctors Mark Berkowitz, Psy.D., and E. Murillo, M.D., both reviewing psychological consultants, reviewed Ms. Boyles' medical records for the SSA in 2012. Without examining Ms. Boyles, Dr. Berkowitz opined that her mental RFC is moderately limited to: interact appropriately with the general public; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; complete a normal

---

[144] *Lester v. Chater*, 81 F.3d at 832 (quoting *Ratto v. Sec'y, Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1421 (D. Or. 1993) (citing *Rodriquez v. Bowen*, 876 F.2d 759, 761 n.6 (9th Cir. 1989))).

[145] Tr. 472 (modified work, 2009), 463 (regular work, 2009), 592 (permanent restrictions, 2012).

workday and week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.[146]   He found no other significant limitations.   He also stated that Mr. Zhang's opinions were not supported by longitudinal history or objective findings from the one time exam.[147]

On a request for reconsideration, Dr. Murillo adopted Mr. Berkowitz's opinions and did not appear to modify what was already written, except that he opined Ms. Boyles was not significantly limited in her ability to maintain attention and concentration for extended periods of time or perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerance.[148]

The ALJ gave Dr. Zhang's opinion little weight for the same reasons as discussed above (*i.e.,* not adequately supported by his objective findings and the lack of any significant mental health treatment).[149]   And she gave both reviewing psychological consultants' opinion that specifically related to the moderate limitation of Ms. Boyles' ability to appropriately interact with the public, little weight because she found that the record did not "sufficiently support" them.[150]

---

[146] Tr. 86-87.

[147] Tr. 87.

[148] Tr. 113-14.

[149] Tr. 30.

[150] *Id.*

Ms. Boyles asserts that the ALJ erred in rejecting the restriction to occasional contact with the public and that this error caused her harm.[151] She contends that by having four doctors[152] specifically opining about her limitation to public interaction, each of them support the other.[153] She also argues that there is nothing in the record to contradict this general opinion held by the four doctors.[154]

The Commissioner contends there is substantial evidence in the record permitting the ALJ to reject both Dr. Zhang's IPE opinions and the reviewing psychological consultants' opinions regarding Ms. Boyles' limitation in her ability to interact with the public.[155] Her argument for Dr. Zhang is the same as above; and for the reviewing psychologist consultants' opinions, the Commissioner points the Court to the ALJ's recitation of Ms. Boyles' social functioning within the ALJ's decision and argues it is sufficient to reject both.[156]

The Court finds the ALJ erred in outright rejecting four different doctor's opinions regarding Ms. Boyles' limitation in her ability to interact with the public. To reject

---

[151] Docket No. 12 at 11.

[152] Dr. Eldrageely opined Ms. Boyles has moderate limitations in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral disturbances and marked limitations in her ability to work in coordination with or proximity to others without being distracted by them. Tr. 665, 656.

[153] Docket No. 12 at 11.

[154] Docket No. 17 at 1.

[155] Docket No. 15 at 5-8.

[156] *Id.* at 6.

uncontradicted treating and examining doctors' opinions, the ALJ must provide clear and convincing reasons. Here, the ALJ provided a conclusory sentence that fails to meet this burden. As explained previously, the lack of psychiatric care, due to transportation and financial reasons, most certainly contributes to the lack of extensive or specialized medical treatment records for Ms. Boyles' on-going mental health issues.

Even so, both reviewing psychological consultants made this opinion with the records they did have available. Their opinions were rendered in May and November 2012. Dr. Zhang's 2012 IPE, the 2007 IPE by Dr. Couture as well as the medical records related to Ms. Boyles' on-going treatment for her foot, hips, and shoulders that occasionally expressed her mental health status at that time[157] were available.

### (4) Evaluation of Ms. Boyles' mental abilities

Ms. Boyles asserts that the ALJ's evaluation of her mental abilities is not supported by substantial evidence.[158] She argues that the ALJ came up with the limitation of "simple, routine, repetitive tasks" on her own and it has no basis in the record.[159] She contends that the ALJ created this restriction on her own because she erred in rejecting specific limitations opined by four different doctors, and this resulted in an overstatement of Ms. Boyles' abilities.[160] The

---

[157] *See e.g.,* Tr. 496 ("clinical depression . . . stable at this time on medication," August 6, 2008, Primary Treating Physician's Permanent and Stationary Report, Michael Davies, M.D.).

[158] Docket No. 12 at 9.

[159] *Id.*

[160] *Id.* at 10.

31

Commissioner did not respond to this specific claim, but did address the necessary components of it within each of the other claims, which together culminate in this overall claim.

The Court declines to address this claim. Because the ALJ improperly rejected the opinion that Ms. Boyles was limited in her ability to sustain concentration on a regular basis for prolonged periods of time and interact with the public on a more than occasional basis, she evaluated Ms. Boyles' mental RFC incorrectly. In turn, an inaccurate RFC was used by the vocational expert to determine if jobs exist in the national and regional market that Ms. Boyles may be able to work in. This error is far from harmless and the case is remanded for further proceedings.

## VII. CONCLUSION

A decision by the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence or it is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Court has carefully reviewed the administrative record, including extensive medical records and concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Ms. Boyles was not supported by substantial evidence. The ALJ erred in the weight she gave the opinions regarding Ms. Boyles' mental health and this error caused her to formulate an inaccurate RFC that was not supported by substantial evidence. Accordingly, remand is necessary to further develop the record.

IT IS HEREBY ORDERED that the Claimant's Motion for Summary Judgment at Docket 11 is GRANTED and this matter is REMANDED for further proceedings in accordance with this opinion.

IT IS SO ORDERED this 29th day of September, 2016.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE